Christie *v.* Bishop.

## CHRISTIE *vs.* BISHOP and others.

A purchaser of a judgment, who had not actually paid the purchase money at the time of the commencement of a suit in this court to set aside a sale under such judgment, is not entitled to protection, as a bona fide purchaser, as against the complainant's equity.

A party who has parted with his right or interest in property, or in a chose in action, by an absolute sale and assignment to another person, cannot by his subsequent admissions affect the right of the purchaser.

And the fact that such admissions are made upon the oath of the former owner does not alter the principle; where such oath is ex parte, and without any opportunity for cross-examination of the person making the admissions.

It is a general rule not to allow admissions, or statements, in the separate answer of one defendant, to be read in evidence, to sustain the complainant's case against a co-defendant; unless the defendants stand in such a relation to each other that the admissions of each, if not under oath, would be evidence against the other; as in the case of several defendants standing in the relation of copartners, or as having a joint interest in the subject matter of the litigation.

The cases of *Field* v. *Holland*, (6 *Cranch*, 24,) and *Osborne* v. *The United States Bank*, (9 *Wheat.* 334,) commented on and explained.

It seems, that where a bill is taken as confessed against a defendant, before his death, and after his death the suit is revived against his heirs, or his personal representatives, they must apply to vacate the order, taking the bill as confessed, if they wish to controvert the allegations in the bill, or to set up any defence except such as has arisen since the entry of such order.

The heirs and personal representatives of a defendant who has suffered a bill to be taken as confessed against him, are bound by his implied admissions arising from his neglect to put in an answer.

The declarations of a party to a sale, or transfer, going to destroy or take away the vested rights of another, cannot, *ex post facto*, work that consequence; nor can they be regarded as evidence against the vendee or assignee.

Christie *v.* Bishop.

The answer of one defendant is not evidence against his co-defendant, except in those cases where the defendants are either legally or fraudulently combined; so as to create a unity of interest between them.

THIS case came before the chancellor upon an appeal from a decree of the late vice chancellor of the sixth circuit. In June, 1833, the complainant procured a loan, from the defendant Bishop and T. Hance deceased, for which he gave to them his bond and warrant for $2500; upon which they caused a judgment to be entered up in the supreme court. Hance subsequently died, and Bishop, together with the defendant E. Hance administered upon his estate. In June, 1841, an execution was issued upon the judgment, in favor of Bishop as the surviving plaintiff in such judgment; under which execution the real estate of the complainant was sold by the sheriff, on the 2d of. September in the same year. One parcel of the complainant's land was purchased at the sheriff's sale by Bishop, at the price of $1200, and another piece by La Bar and others, for the price of $800. The certificate for the last mentioned piece was subsequently assigned to Bishop. A third piece was sold to R. Townley for $120; and certificates upon all the sales were duly executed by the sheriff and filed according to law. In December thereafter Bishop and E. Hance, by an instrument under their hands and seals, and in consideration of a covenant on the part of the defendant Robinson to pay them $2000 and interest in one year, and the residue of the amount due upon the judgment in two years, with interest, sold and assigned to him the judgment against the complainant, and also all the right acquired by Bishop, either legal or equitable, by reason of his purchase at the sheriff's sale, and by the assignment of the certificate of La Bar and others, and the right of Bishop and E. Hance, or of either of them, to recover from the sheriff, or from Townley, the amount of the said Townley's bid upon the piece of land purchased by the latter at the sheriff's sale.

In May, 1842, the complainant filed his bill in this cause against Bishop and E. Hance; which bill was subsequently amended by making Robinson a party defendant, and stating the sale and assignment to him. The bill alleged, among other

things, that the bond and warrant of attorney were given in pursuance of an usurious agreement, and that the amount actually loaned, and for which the bond and warrant were given, was only $2375. It also alleged that the complainant in 1834 paid to Bishop and Hance $300 upon the judgment, and that they gave him a receipt for $175 only; that in the fall of 1835, and also in the fall of 1836, he made payments of the like amounts, for which similar receipts were given for $175 only, on each payment; that in June, 1837, he paid them in property $125, which was agreed to be paid and received as an usurious premium for forbearance for that year; that in the fall of the same year he paid them $75, for which a receipt was given to answer on the judgment; and that in November, 1840, he paid to Bishop, the surviving judgment creditor, and who was then one of the personal representatives of Hance, the further sum of $500 on the judgment; notwithstanding which several payments, the execution which was issued upon the judgment, in June, 1841, directed the sheriff to collect $2840. The bill called for an answer on oath from the defendants, and prayed that an account might be taken and stated of the moneys and property paid by the complainant, upon or towards the judgment; and that, upon his paying to the defendants, in addition to the amount which he had already paid on or towards the said judgment, a sum sufficient to pay the amount actually loaned to him by Bishop and Hance, the certificates of sale of his property under the execution might be cancelled, or rendered inoperative, and that the judgment might be deemed satisfied; and for such further relief as he might be entitled to in the premises.

The defendants' Bishop and E. Hance put in a joint and several answer, in which the former admitted, in effect, all the allegations in the bill as to the usury in the original bond and warrant, and in retaining the four several sums of $125 each out of the payments made by the complainant, as extra premiums for the forbearance to enforce payment of the judgment from year to year. And E. Hance, who had no personal knowledge of these matters, swore to the truth of the same, as stated

by Bishop, upon her information and belief. The defendant Robinson, the purchaser of the judgment and of the certificates given upon the sale by the sheriff, put in a separate answer, in which he denied all knowledge as to all or any of the matters of the complainants' bill, except as to the sale and assignment to him of the judgment and certificates; which sale and assignment he swore in his answer was an actual and bona fide sale, and that he became liable by his covenant to pay the whole amount of the judgment, as before stated. No proofs were taken by either party, and the cause was brought to a hearing upon the pleadings. The vice chancellor decided that the defendant Robinson was not entitled to protection as an assignee of the judgment; but considering the prayer of the bill as an offer to pay the amount actually due after deducting the payments made by the complainant, he directed a reference to a master to ascertain the balance due on account of the actual loan of $2375, after deducting the payments. And he decreed that so much of the payments as was necessary should be applied towards the accruing interest up to the 20th of November, 1840, when the last payment was made, and the residue applied on the principal of the loan; that upon payment of that balance, with interest thereon from the time when it should be ascertained, the judgment should be cancelled and discharged of record, and the certificates of sale cancelled and the sale held void; but in case the complainant should neglect or refuse to pay such balance within the sixty days allowed for that purpose by the decree, the bill should be dismissed, without costs. The complainant appealed from the part of the decree which directed that so much of the payments as was necessary should be applied towards the accruing interest up to the time when the last of those payments was made.

*C. Humphrey*, for appellant. I. The agreement between the complainant and Thomas Bishop and Thomas Hance was usurious, and the judgment set forth in the bill as having been confessed for the purpose of securing the money loaned in pursuance of such agreement was therefore void. (2 *Paige*, 273. 21 *Wend.* 105.) Where there is a negotiation for a loan or advance of

money, and the borrower agrees to return the amount advanced at all events, it is a contract of lending, within the spirit and meaning of the statute. And whatever shape or disguise the transaction may assume, if a profit beyond the legal rate of interest is intended to be made out of the necessities or improvidence of the borrower, or otherwise, the contract is usurious. (*Colton* v. *Dunham*, 2 *Paige*, 273.) The test of usury is, whether the substance of the transaction is really a loan of money, or the creation of a debt, whatever may be the form of the contract; and if so, whether the lender or payee has stipulated for or secured to himself, by means of the loan or arising either from it, or from any thing connected with it and forming a part of the transaction, any profit or pecuniary advantage he would not otherwise have been entitled to, exceeding the rate of interest allowed by law. (*Dowdall* v. *Lenox*, 2 *Edwards*, 274.) A profit made or loss imposed on the necessities of the borrower, whatever form, shape or disguise it may assume, where the treaty is for a loan, and the capital is to be returned at all events, has always been adjudged to be so much profit taken upon a loan, and to be a violation of the usury laws, &c. (*Same case; and Bank U. S.* v. *Owens*, 2 *Peters*, 537.)

Was the transaction a loan of money, or of the credit of B. and H. to C. by virtue of which the money was procured for his use? The facts are, they procured $2300 at the bank, on their own notes, and added to that sum $75 of their own money, and lent the whole to C., taking a judgment for $2500. A part of the sum was therefore actually their own. 1. If the transaction was a loan it was clearly an express violation of the statute. (1 *R. S.* 760, § 1.) 2. If it was a loan of their credit, it is equally usurious. (*See Steele* v. *Whipple*, 21 *Wend.* 105.) 3. But if B. and H. contend that they not only loaned their credit, but had the trouble themselves of procuring the money for the use of C., is the transaction usurious? In the case of *Steele* v. *Whipple*, the court, to a qualified extent, recognize the doctrine, on the authority of *Ex parte Gwyn*, (2 *Dea. & Chit.* 12,) that bona fide expenses and trouble actually incurred may be paid on a loan, besides interest; though the lender

---

---

be not engaged in trade. "But," say the court, "if this be so, none is actually shown in the case at bar. The money was procured by the endorser and withheld until the borrower came to his terms." (*Id.* 106.) That case is analogous to this, in all its leading features, with this exception, that in the present case B. and H. applied part of their own money to make up the sum loaned; which circumstance goes to prove that in the intention of the parties the transaction, at the time, was regarded as a mere lending of money. (*See also Costar* v. *Dilworth,* 8 *Cowen,* 299. *Crane* v. *Hubbell,* 7 *Paige,* 413.)

II. The answer of Bishop was evidence against Hance, his co-defendant. 1. They admit a joint interest. 2. They are both administrators of T. Hance. 3. Bishop and Hance were partners in the original transaction, and the control of the business survived to Bishop. The rule that the answer of one defendant cannot be read in evidence against a co-defendant does not apply to a case where the defendants are partners in the same transaction. For in such cases the answer or confession of either is evidence against the others. (*Am. Ch. Dig. tit. Evidence,* 343. 1 *Gall.* 630. 3 *Haywood,* 310.) Where one defendant succeeds to another, so that the right of one devolves on the other, and they become privies in estate, the rule does not apply. (*Osborne* v. *U. S. Bank,* 9 *Wheat.* 738.) After a co-partnership has been established aliunde, an answer of one of a firm is evidence, in a court of law, against the company, to show admissions of the plaintiff's demand. (4 *Stew. & Porter,* 34.)

III. The demand was invalid in the hands of the assignee, Robinson; who took the same subject to complainant's rights. The assignee of a judgment takes it subject to all the equities which existed against it in the hands of the assignor. (*Webster* v. *Wise,* 1 *Paige,* 319.) There is no rule in equity better settled than that a bond, or other chose in action, is liable to the same equity in the hands of the assignee that existed against it in the hands of the obligee. (*Clute* v. *Robinson,* 2 *John. Rep.* 612.)

IV. The complainant should be credited with the payments

Christie *v.* Bishop.

made by him; as stated and admitted by the pleadings. And on payment by him of the balance of the sum actually loaned, the certificates should be cancelled and the judgment satisfied of of record. The complainant asks to be relieved on paying the sum actually loaned, without interest. The revised statutes provide that it shall not be necessary, on filing a bill for discovery, to pay, or offer to pay, any interest whatever on the sum or thing loaned, &c. nor shall a court of equity require or compel the payment or deposit of the principal sum, or any part thereof, as a condition of granting relief, &c. In this case the answer discloses all that is demanded by the prayer for discovery in the bill. The former statute of usury, (1 *R. L.* 64,) did not prescribe the terms upon which the court of chancery might order discovery, or grant relief. The court then required a payment, or an offer to pay, the sum loaned, and lawful interest; as a condition of either. (*Fanning* v. *Dunham,* 5 *John. Ch.* 122.) But the revised statutes prescribe a different rule. (*See* 1 *R. S.* 761, § 8.) There is a class of cases in which the borrower is compelled to resort to a court of equity for relief; as, for instance, a judgment entered on a bond and warrant of attorney, &c. (*See Livingston* v. *Harris,* 11 *Wend.* 329.) The principle established in that case, which arose under the provisions of the revised statutes, is that where discovery is asked for, as well as relief, it is necessary to pay or offer to pay the sum actually loaned, without interest. (*S. C.,* 3 *Paige,* 528.) The bill also prays for general relief. By the act of 1837 it is not necessary to pay, or to offer to pay, either principal or interest, as a condition of either discovery or relief. (*Laws of* 1837, *p.* 486.) The offer of the complainant was entirely gratuitous, and he is entitled to the relief he asks, upon complying with the terms of his offer, as made.

V. The decree should have been according to the offer of the complainant, and the prayer of the bill; and with costs to be paid by the defendants. The offer was to pay the balance, after deducting the whole amount actually paid from the sum actually loaned. The complainant did not offer to pay any

Christie v. Bishop.

interest.  The decree of the vice chancellor should be modified accordingly.

*B. Johnson*, for respondents.   I. The complainant has entirely failed to prove the allegations in the bill in respect to the usury. The only evidence on the subject is contained in the answer of Bishop; and he expressly denies the agreement as set out by the complainant.   The court therefore cannot decree the bond, warrant and judgment to be void as to any of the defendants.   (*Cunningham* v. *Freeborn*, 3 *Paige*, 564.)   To constitute usury there must be a corrupt agreement.   (2 *Cowen*, 679, *n. and p.* 704.)

II. If the facts detailed by Bishop are of importance to the complainant, they are only so as against himself, and cannot affect the rights of Hance.   If therefore any relief is granted, it can only be as against Bishop; and his interest is one third of the sum loaned.   But no relief can be decreed against him; for the case must be made out against both, if at all.   The answer of one defendant is not evidence against his co-defendant, except in special cases, when defendants are partners; and not then without some act of concurrence by the other.   (*Phœnix* v. *Ingraham*, 5 *John. R.* 413.   *Judd* v. *Seaver*, 8 *Paige*, 553.)   If any relief is granted, it should be as against Bishop pro tanto.   (*See* 8 *Paige*, 555.)

III. The judgment in question having been rendered before the act of 1837, (*Sess. Laws of* 1837, *p.* 486,) the complainant could not come into this court for discovery and relief without offering to pay the sum actually loaned, with lawful interest. (*Campbell* v. *Morrison*, 7 *Paige*, 157.)   In this case relief is not asked on those terms; and without such an offer Bishop would not have been bound to disclose the facts in his answer.

IV. The defendants Bishop and Hance are alleged to be administrators of Thomas Hance deceased.   And certainly the declarations of either are not competent as against the heirs, or those entitled to a distributive share of his estate; especially when such declarations are to work a forfeiture.   (*Osgood* v. *Manhattan Co.*, 3 *Cowen*, 612.   *Gray* v. *Patterson*, 1 *Esp. N. P. Cas.* 135.)

Christie *v.* Bishop.

V. As respects the defendant Robinson, it cannot be pretended there is the least evidence to affect him. Bishop's declarations cannot, and could not at any time, be evidence. There is no community of interest. And the declarations of a vendor after the sale are incompetent to affect the vendee. (*5 John. R.* 413.)

VI. Robinson, as the purchaser of the judgment, cannot be affected, even if usury is established as between the original parties. As respects him and Mrs. Hance, therefore, the complainant's bill should be dismissed with costs; and it should be dismissed as respects Bishop, because he had parted with his interest. (*Jackson* v. *Henry*, 10 *John.* 185. *Cuthbert* v. *Haley*, 8 *Durn. & E.* 390.) The rendition of the judgment was the act of the court, and was not void. (*Wardell* v. *Eden*, 1 *John.* 531, *n.*)

THE CHANCELLOR. The answer of Bishop admits facts which show, as against him, that the original bond and warrant were given to secure a usurious loan. And as the legal title to the judgment was in him by survivorship, and as he was also one of the personal representatives of Hance, his co-plaintiff in the judgment, the vice chancellor was right in supposing his answer was also sufficient proof of the facts, so far as the estate of Hance was interested in the judgment. Again; E. Hance has joined in the answer with Bishop, and sworn to her belief of the truth of the several matters which, in the answer, are stated to be true upon his own knowledge. The answer therefore admits the usury, so far as the original defendants in the suit had any interest in the judgment at the time of filing the original bill. And if those defendants, or either of them, had been the actual owners of the judgment, and of the certificates of sale by the sheriff on the execution, at the time of the commencement of this suit, the complainant would have been entitled to all the relief specifically prayed for in his bill; without any further proof of the usury than what is contained in the joint and several answer of Bishop and E. Hance. In that case, the only question for consideration would have been as to the construction of the prayer for relief.

From the peculiar phraseology of that prayer it is difficult to ascertain whether it was intended as an offer to pay what was

equitably due upon the judgment, after deducting the several sums paid for principal and interest, and usurious premiums for forbearance from time to time; or was only intended as an offer to pay the original sum loaned, without interest, after deducting from the amount of the original loan the whole amount of such payments, as an offset against the principal of the loan. The vice chancellor appears to have adopted a third construction. And he has treated the payments as only applicable to the prin-- cipal moneys loaned, so far as they exceeded the legal interest due upon the loan at the time such payments were made; but has not required the complainant to pay interest on the balance remaining due upon the loan, subsequent to the last payment. In the view which I have taken of the case, however, it is not necessary to inquire which of these several constructions of the prayer of the bill was right. For the complainant was not enti- tled, upon the facts of the case as they appear upon the plead- ings in reference to the defendant Robinson, to as favorable a decree as the vice chancellor has actually made. And if Rob- inson had appealed, I should have been compelled to reverse the whole decree, and to dismiss the bill as to him; and to make a decree against the other defendants, directing them to refund to the complainant the moneys received from him, and so much as they had realized or were entitled to receive from Rob- inson upon the sale under the judgment, after deducting there- from the $2375 actually loaned to the complainant, and the legal interest thereon. In other words, the complainant would have been entitled to the same decree against Bishop and E. Hance as if he had paid the whole amount directed to be col- lected upon the execution, to Robinson, as the assignee of the judgment; and had then filed his bill against Bishop and E. Hance to recover back all the usurious premiums which he had paid to Bishop and Hance, and also those which he had been compelled to pay to the assignee of the judgment.

The vice chancellor was right in supposing that Robinson, who was the purchaser of a mere chose in action, and who had not actually paid the purchase money therefor at the time of the commencement of this suit, was not entitled to protection as a

Christie *v.* Bishop.

bona fide purchaser, as against the complainant's equity, if he had any. But in making the decree appealed from, the vice chancellor appears to have entirely overlooked the circumstance that the fact of the usury, as alleged in the bill, is not admitted by the answer of Robinson; but that on the contrary it is denied, upon the information and belief of this defendant, in the general traverse at the conclusion of his answer. The bill called upon Robinson to state what was the consideration of the assignment to him, and whether the same was an actual and bona fide sale. And the answer, which is responsive to the bill in this respect, is that it was an actual and bona fide sale. In other words, it was not a mere nominal transfer of the sheriff's certificates, and of the balance due upon the judgment, for the use and benefit of the assignors. And if the complainant has not succeeded in proving the fact of usury in the judgment, as against the defendant Robinson, the latter is entitled to retain the benefit of his purchase; and the remedy of the complainant should have been against the assignors, for what they were equitably liable to pay, upon their own admission of the facts as against themselves.

The vice chancellor, in making his decree, probably proceeded upon the supposition that the answer of Bishop, under whom Robinson claimed by assignment, was evidence, as against the latter, that the judgment was usurious. This would have been so, if the sale and assignment to Robinson had been made subsequent to the putting in of such answer. But a party who has parted with his right or interest in property, or in a chose in action, by an absolute sale and assignment to another person, cannot, by his subsequent admissions, affect the right of the purchaser. Indeed, the supreme court of this state has gone still further, and has held that the admissions of a former owner of personal property, or of a chose in action, even if made before he parted with his title, are not evidence as against his vendee. (*Beach* v. *Wise*, 1 *Hill's Rep.* 612. *Stark* v. *Boswell*, 6 *Idem*, 495.) And it is said in a note to the last mentioned case, that the doctrine of these cases was directly sanctioned by the court for the correction of errors, in December, 1844, in the case of *Paige* v. *Cagwin*. I agree with Mr. Justice Bronson, however,

that the rejection of the admissions of the former owner of personal property, or of choses in action, other than negotiable securities, made by such owner before he parted with his interest in the property, was a departure from a well established principle of the law of evidence. And if it is hereafter to be followed, it must be upon the ground that the question is no longer open to discussion in the courts of this state. It would however be equally a departure from principle to allow admissions of a former owner of property, made after he had parted with all his interest therein, to be given in evidence; to affect the right of the purchaser, in a contest with a third person. And the fact that such admission is made upon the oath of the former owner, does not alter the principle, where such oath is made ex parte, and without any opportunity for the party against whom it is to be used, to cross-examine the person making such admission. It is a general rule, therefore, not to allow the admissions or statements, in the separate answer of one or more defendants, to be read in evidence in this court, to sustain the complainant's case against a co-defendant, unless they stand in such a relation to each other that their admissions, not under oath, would be evidence against each other; as in the case of several defendants standing in the relation of co-partners, or as having a joint interest in the subject matter of the litigation. (*Clark's Ex'rs.* v. *Van Reimsdyk,* 9 *Cranch,* 156. *Pritchard* v. *Draper,* 1 *Russ. & Myl. Rep.* 200. *Gres. Ev. in Eq.* 24.) There are indeed two cases in which the late Chief Justice Marshall is supposed to have expressed an opinion that the rule, that the answer of one defendant could not be read in evidence against another, except when they hold a joint interest, does not apply to the case of a defendant who has derived title to the subject matter of the litigation, under or through the one whose answer is offered in evidence against such defendant. (*Field* v. *Holland,* 6. *Cranch,* 24. *Osborne* v. *The United States Bank,* 9 *Wheat. Rep.* 332.) And, I see that the first of these cases is referred to by Professor Greenleaf, in his recent and very valuable treatise on the law of evidence, (*Greenl. Ev.* 210, § 178,) as sustaining the same principle,

Christie v. Bishop.

In the case of *Field* v. *Holland* this precise question was not before the court; and the opinion of Chief Justice Marshall only goes to the point, that the answer of a defendant through whom the co-defendant claims is evidence in favor of such co-defendant, as to matters which both were called on to answer; in relation to transactions which took place before the sale to such co-defendant. It may perhaps be inferred from the language of the chief justice, in that case, that if the answer of Holland had admitted the facts charged in the complainant's bill, instead of denying them, it could have been used as evidence against his co-defendants; who had purchased under the judgment in his favor against Cox. But there certainly was nothing to authorize the reporter, in his syllabus of the decision in that case, to state, as a point decided by the court, that the answer of one defendant is evidence *against* other defendants claiming through him. In the case of *Osborne* v. *The Bank of the United States*, the question arose as to how far the answer of one treasurer of the state of Ohio was evidence against his successor in office, as to the identity of funds taken from the bank by the former treasurer; both being joined as defendants in the same suit. And in reference to the principle of evidence, that the answer of one defendant cannot be read in evidence against another, Chief Justice Marshall says, "this is generally but not universally true. Where one defendant succeeds to another, so that the right of the one devolves on the other, and they become privies in estate, the rule is not admitted to apply. Thus if an ancestor die pending a suit, and the proceedings be revived against his heir, or if a suit be revived against an executor or administrator, the answer of the deceased person, or any other evidence establishing any fact against him, might be read also against the person who succeeded to him." And it certainly seems to have been the opinion of the court in that case, that these principles, the correctness of which no one can dispute, were applicable to the case of an answer put in by a defendant who had parted with all his interest in the subject matter of the litigation, previous to the commencement of a suit, to one who was afterwards made a co-defendant with him in

such suit. But there is a very manifest difference between that case and the cases supposed in the opinion of the learned chief justice. For in the cases supposed, the answer of the ancestor or of the deceased party is an admission made by him, while he was the owner of the subject matter of the litigation, and as such may be given in evidence against any person claiming title under him subsequent to such admission. And upon the same principle, if a bill is taken as confessed against a defendant before his death, and the suit is subsequently revived against his heirs or personal representatives, they must apply to vacate the order taking the bill as confessed; if they wish to controvert the allegations in the bill, or to set up any defence except such as has arisen subsequent to that order. For, the suffering of the bill to be taken as confessed against him was an admission by the original defendant, while he was alone interested in the subject matter of the litigation, that the allegations in the complainant's bill were true, and that he had no valid defence to the claim made by the complainant, except such as appeared from the bill itself. The question now under consideration did not necessarily arise in the case of *Osborne* v. *The United States Bank;* as the answer of Sullivan, in that case, contained a distinct admission that he received the money in controversy from Currie, his predecessor in office, who informed him that it was the money which had been taken from the bank. That answer was therefore of itself evidence of the identity of the funds. For it contained evidence of the declaration of the former treasurer, made at the time he parted with the money, to his successor in office. It was not therefore evidence of a declaration of the former treasurer after he had parted with all his interest in the fund to the defendant Sullivan. And as I understand the case, the decision of the court is placed upon that ground; though it is evident the opinion of the learned chief justice was that the answer of Currie, under the circumstances of that case, was admissible in evidence as against his co-defendant.

But even if these two cases, in the supreme court of the United States, are to be considered as express decisions of that court

upon the question now under consideration, and notwithstanding the respect which is justly due to the opinions of the very able and distinguished jurists who occupied seats upon the bench of that court when those cases were before them for decision, I do not feel at liberty to adopt such decisions as the law of this state; in opposition to the decision of the court of dernier resort here, and to the opinion of one who, as a judge, has had few equals either in this or any other country. In the case of *Grant* v. *The United States Bank*, (1 *Caines' Cas. in Error*, 112,) this question came before the court for the correction of errors upon an appeal from a decision of the then chancellor. The appellant Grant was the holder of a bond and mortgage originally given to Taylor, and assigned by him to McGregor, who afterwards assigned the same to Grant. And one of the principal questions in the case was whether this mortgage, in the hands of Grant, was a valid security for the amount therein mentioned and thereby secured. In the bill filed by the Bank of the United States against Grant, the holder of the bond and mortgage, Taylor and McGregor, and some other persons, were made co-defendants. The consideration of the mortgage was impeached by the answer of all of the former holders thereof; and the question arose whether that answer could be read as evidence against Grant the assignee. In reference to that question Mr. Justice Spencer, who delivered the opinion of the court, says: " I have no hesitation in saying that the answer of one co-defendant is evidence neither for nor against the other. The authorities cited maintain this position." And in conformity with that opinion, Grant obtained a decree for the full amount of his mortgage; notwithstanding the admission in the answer of his co-defendant, under and through whom he claimed such mortgage. A similar question arose in the subsequent case of *Phenix* v. *The assignees of Ingraham*, in the same court, (5 *John. Rep.* 412.) There the answer of Ingraham was offered in evidence, against his co-defendant Phenix, who claimed title to the property under him; for the purpose of establishing the fact that Ingraham made the assignment to Phenix in contemplation of bankruptcy, and to give the assignee a fraudulent

preference. Mr. Justice Spencer again delivered the opinion of the court, which opinion was concurred in by Chief Justice Kent, and Mr. Justice Van Ness, and all the other members of the supreme court who were present at the decision. And in reference to this question, he says: "No proposition can be clearer than that the answer of one defendant is not evidence against his co-defendant; and that the declaration of a party to a sale or transfer, going to destroy or take away the vested rights of another, cannot, *ex post facto,* work that consequence, nor be regarded as evidence against the vendee or assignee."

Nor are the decisions in the court for the correction of errors in this state, alone in conflict with the opinion that the answer of a defendant under or through whom a co-defendant claims to have derived his title to the subject matter of the suit may be read as evidence against the latter. For it will be found, upon examination, that similar decisions have been made in the courts of several of our sister states. And I have not been able to find any case in the reports of the court of chancery in England, or in Ireland, in which the answer of one defendant has been permitted to be read as evidence against another; except in those cases where the defendants were combined, either legally or fraudulently, so as to create a unity of interest between them. It is an established rule in chancery, says Judge Wallace, in *Winters* v. *January,* (*Litt. Sel. Ca.* 13,) that in no other case can the answer of a defendant be taken as evidence against a co-defendant.

In the case of *Hunt and Blanton* v. *Stephenson,* (1 *A. K. Marsh. Rep.* 570,) the precise question now under consideration came before the court of appeals in Kentucky. For upon examining that case it will be seen that the object of the suit was to obtain relief against the assignees of a debt, upon the ground that it had been paid to the assignor before the assignment thereof to the appellants. And the answer of the assignor was relied on as evidence, against his co-defendants, the assignees, to establish the fact that the debt had been paid to him, and was therefore not a valid and subsisting security in his hands at the time of the assignment. Upon that state of facts the court de-

Christie *v.* Bishop.

cided that the answer of the assignor could not be used as evidence against the assignees; and that as they had admitted nothing in their answer, the right to relief, as against them, must depend upon the evidence and exhibits in the suit. This decision was subsequently followed by the same court in the cases of *Moseley* v. *Armstrong,* (3 *Mon. Rep.* 283,) and of *Graham* v. *Sublett,* (6 *J. J. Marsh. Rep.* 44.)

In the case of *Collier* v. *Chapman and others,* (2 *Stew. Alab. Rep.* 168,) the supreme court of Alabama decided that the answer of one defendant could not be read as evidence against his co-defendant; *particularly* where it tended to invalidate a title made by the former to the latter. And the fact that one defendant, against whom the answer was sought to be used as evidence, had derived title to the property in controversy under or through the other defendant, who had put in such answer, was held not to take the case out of the general rule that the answer of one defendant cannot be read against his co-defendant. A similar decision was made by the same court, in the subsequent case of *Singleton* v. *Gayle,* (8 *Port. Rep.* 270.) And in the case of *Jones* v. *Hardesty and others,* (10 *Gill & John. Rep.* 405,) in the court of appeals of the state of Maryland, the two cases of *Field* v. *Holland* and of *Osborne* v. *The United States Bank,* were cited by counsel and specially relied on as establishing a different doctrine. But that court, in a well considered opinion, arrived at the conclusion that the doctrine of those two cases, so far as it related to this question, was wholly irreconcilable with an otherwise unbroken series of authorities on the subject, both English and American. The answer of L. Harwood was therefore rejected, as evidence against her co-defendants who claimed title to the subject matter of litigation under her.

There being no evidence in the present case, as against the defendant Robinson, to establish usury in the judgment assigned to him, and under which he has obtained his certificates of the sale of the appellant's lands by the sheriff, I cannot reverse or alter this erroneous decree, made by the vice chancellor, without being compelled to make one in lieu thereof which will be

far less beneficial to the appellant. And as the appellant only claims to reverse a part of the decree which is not erroneous, and to obtain a modification of the decree to which he is not entitled, the proper course is to dismiss the appeal, with costs.