DIBRELL (BLACKWELL v.). See Case No. 1,475.

DICK (BEALL v.). See Case No. 1,162.

DICK (CLARK v.). See Case No. 2,818.

---

## Case No. 3,890.

### DICK v. HAMILTON et al.

[Deady, 322.][1]

Circuit Court, D. Oregon. Dec. 2, 1867.

EQUITY—ANSWER AS EVIDENCE—CONVEYANCE BY HUSBAND TO WIFE—SEPARATE PROPERTY—LIABILITY FOR HUSBAND'S DEBTS.

1. In equity, the general rule is that the separate answer of one defendant is not evidence to support the complainant's cause as against a co-defendant; and the exceptions to this rule appear to be limited to cases where the defendants stand in such relation to one another as to render their admissions out of court evidence against each other.

2. Where the wife purchased real property with money received from the sale of her property, but which had become the husband's by virtue of the marriage, and took a conveyance to herself: *Held*, that although this was in effect a voluntary conveyance from the husband to the wife, it was valid, if the husband was solvent at the time, and it was not made with intent to defraud subsequent creditors.

[Cited in U. S. v. Griswold, 8 Fed. 562.]

3. It is not to be presumed that a creditor of the husband's, trusted him upon the faith of property, which, although occupied by him in conjunction with his wife, appeared from the registry of deeds to have been at the time the property of the wife.

4. A subsequent creditor has no claim on the property of the wife for money expended thereon, unless it appear that it was so expended with intent to defraud such creditor.

5. A conveyance of real property to the wife by a third person in consideration of a release of a right of dower by the former in certain other property, is a conveyance upon a consideration moving from the wife, and valid as against the existing or subsequent creditors of the husband.

6. Where an insolvent husband lived with his family in the house of his wife, and during the time made repairs thereon, so as to keep it habitable: *Held*, that the property was not liable to the creditors of the husband for the value of such repairs.

7. At common law a married woman is incapable of contracting a personal obligation, and therefore a conveyance of real property to one in consideration of her promissory note for the purchase money, is in effect a gift to her.

8. Where real property is conveyed to the wife, to hold the same free from the control of her husband and for her own separate use, it becomes, by force of the terms of the conveyance, her separate property, and the husband as such has no right in or to it.

[Cited in U. S. v. Griswold, 8 Fed. 569.]

9. A conveyance to the wife, the husband being insolvent, in consideration of a promissory note signed by the husband and wife and secured by a mortgage on the separate property of the latter, ought, unless the contrary is shown, to be presumed to have been made upon the faith of such security.

This was a suit by a creditor of Alexander Hamilton and Thomas, his son, to subject certain real property situate in the city of Portland, and held by the wife of said Alexander, to the payment of his debts upon the ground that it had been acquired with his means and credit, and the conveyance taken to the wife with intent to defraud creditors. The defendant, Christina Hamilton, answered the bill, but said Alexander and Thomas did not, and as against them the bill was taken for confessed.

The court found the material facts of the case to be as follows:

I. That the defendants, Alexander Hamilton and Christina Hamilton, were intermarried in the year 1853, at Portland, Oregon, and that the relation of husband and wife has ever since subsisted between them.

II. That prior to the marriage of the defendants as aforesaid, Christina Hamilton inherited from her mother, a piece or parcel of real property situated in the state of Missouri, and that in July, 1857, she sold and conveyed the same to her brother, Asa Chandler, for the sum of one thousand dollars; and that she received from her said brother at the said time, the additional sum of two hundred dollars, in payment for the prior use and occupation, by said Chandler, of said real property.

III. That on February 13, 1858, in consideration of the sum of five hundred dollars, paid by Christina Hamilton, to Daniel H. Lownsdale, the latter conveyed to the former, the real property described in the complaint as block 250, to have and to hold the same to her and the heirs of herself by the defendant, Alexander Hamilton, forever.

IV. That the defendant, Christina Hamilton, since her marriage aforesaid, has not received from any source or person, other than her husband, any money or property, except the sum of $1,200 as aforesaid.

V. That during the spring of 1858, Alexander Hamilton purchased the real property described in the pleadings as blocks 251 and 252, and lots 3, 4, 5, and 6, in block 253, and that of the money expended in making such purchase he obtained $700 of his wife—the same being a part of the $1,200 paid her by her brother; and that during the summer of the same year, Alexander Hamilton had these blocks cleared, and a dwelling house built upon the lots in block 253, at a cost of about $1,900.

---

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

VI. That in the spring of 1858, Alexander Hamilton was solvent, and so continued until the spring of 1859, when from causes not foreseen or contemplated by him, he became insolvent and still remains so.

VII. That on January 14, 1862, blocks 251 and 252, and lots 3, 4, 5 and 6 aforesaid, were sold on execution to satisfy a decree of the circuit court of Multnomah county, foreclosing a mortgage thereon, executed by Alexander Hamilton to one William A. Abbott; and that said Abbott was the purchaser at such sale, and afterwards conveyed said property to Thomas Robertson.

VIII. That Christina Hamilton was not a party to the mortgage aforesaid, and, notwithstanding the sale and foreclosure aforesaid, had a contingent right to dower in the property conveyed to Robertson as aforesaid; and that afterwards, on August 9, 1864, in consideration of the release of such right of dower, in said blocks 251 and 252, by Christina Hamilton to Robertson, the latter and wife conveyed to the former, and to her heirs of her body by her then husband, lot 4 aforesaid, to have and to hold to her said heirs aforesaid, to her and their own separate use, benefit and behoof forever, free from all control of her husband.

IX. That on the day of August aforesaid, Robertson and wife, for the consideration of $700 paid by Moses H. Young, conveyed to said Young lots 3, 5 and 6 aforesaid; and this purchase and conveyance was made and received by said Young at the request of Christina Hamilton and upon the agreement between said Christina and Young, that the latter would sell and convey to the former said lots for a like consideration—to which effect said Young executed his bond to said Christina.

X. That on September 5, 1865, said Young and wife, in consideration of the promissory note of Christina Hamilton for the sum of $700, conveyed said lots 3, 5 and 6, to said Christina and her heirs of her body by her then husband, to have and to hold to her said heirs aforesaid, to her and their own separate use, benefit and behoof forever, free from all control of her husband.

XI. That the dwelling house aforesaid, is located in the greater part upon lot 4 of said lots, and has been occupied since its erection continuously by the defendant, Alexander Hamilton and his family, as a dwelling place.

XII. That the property aforesaid was a part of the donation claim of Nancy Lownsdale, deceased, the wife of Daniel H. Lownsdale aforesaid, and that in a suit by certain of the heirs of said Nancy, against Christina and Alexander Hamilton and others, for partition of said claim, the circuit court for the county of Multnomah, on August 12, 1865, among other things, adjudged and decreed that said heirs, for and on account of the inequality in quantity and value of the partition then made of the lands of their ancestress, should have and hold a lien upon block 250 for the sum of $1,423.91, and $103.37, costs and expenses of the suit, and upon lots 3, 4, 5 and 6 aforesaid, for the sum of $911.96.

XIII. That on September 16, 1865, Christina Hamilton borrowed $700 to pay the note aforesaid, given by her to Moses Young, and that with the money so borrowed she paid $550 on said note to Young, and that the remainder thereof is still unpaid; and that the $700 aforesaid was borrowed of James Catlin upon a promissory note signed by said Christina and Alexander Hamilton, and secured by a mortgage executed by each of them upon lots 3, 4, 5 and 6 in block 250 aforesaid, which note and mortgage still remain unpaid and in force.

XIV. That on February 16, 1866, Christina Hamilton borrowed of Frances Young, wife of Moses Young aforesaid, a sum sufficient to satisfy and discharge the lien aforesaid upon block 250, in favor of the heirs of the said Nancy Lownsdale; and that said sum was borrowed upon a promissory note, signed by said Christina and Alexander Hamilton, and secured by a mortgage executed by each of them upon block 250 aforesaid; and that said note and mortgage still remain unpaid and in force, except as to the sum of $109, which has been paid by Christina Hamilton; and that with the money so borrowed, said lien was then satisfied and discharged; and that the lien aforesaid, in favor of the heirs aforesaid, upon the said lots 3, 4, 5 and 6, still remains wholly unsatisfied and in force.

XV. That during the years 1858, 1859, 1860 and 1862, Alexander Hamilton expended in improvement upon block 250 the sum of $600, about $400 of which sum was expended prior to and during the spring of 1859; and that during the summer and fall of 1864, and after the conveyance thereof to Christina Hamilton, said Alexander expended upon lots 3, 4, 5 and 6 the sum of $277, as follows: $247 upon the dwelling-house aforesaid, situate thereon, and in fencing the same, $30.

XVI. That since the commencement of this suit, J. M. Starr, in pursuance of a judgment of this court, given in an action therefor against Alexander Hamilton, has recovered the possession of block 250 aforesaid, for the life of the said Alexander Hamilton.

XVII. That the complainant and James Vantine, on and before January 9, 1867, were doing business in San Francisco, California, under the firm name of James Vantine & Co.; and that said firm on said day of January recovered judgment in this court against the defendants, Alexander and Thomas Hamilton, for the sum of $2,306.44, and $63.52 costs and disbursements; and that on February 2, 1867, execution issued out of this court to enforce said judgment, which execution was duly returned wholly unsatisfied; and that said judgment was

given as aforesaid, in an action upon an account for goods, wares and merchandise purchased of said James Vantine & Co. by said Alexander and Thomas Hamilton, between September 4, 1863, and May 27, 1864; and that before the commencement of this suit said James Vantine was deceased, and the complainant, David Dick, was thereafter and now is the sole surviving partner of the firm aforesaid.

J. H. Page & W. W. Reed, for complainant.

W. Lair Hill, for defendant, Christina Hamilton.

DEADY, District Judge. The defendants, Alexander and Thomas Hamilton, have not answered, and as against them the complaint is taken for confessed. Counsel for the complainant maintained that the default of these defendants, and the consequent admission by them of the facts stated in the complaint, is to be taken as evidence against their co-defendant, Christina Hamilton. But, in my judgment, the rule of law is otherwise; and consequently, in arriving at the foregoing conclusions of fact, as between the complainant and Christina Hamilton, I have disregarded the default of these defendants. The admission of these defendants, arising from their failure to answer, cannot in any view of the question have a more favorable effect for the complainant than if such defendants had answered and affirmatively admitted the truth of the complaint. The general rule seems well established, that the separate answer of one defendant is not evidence to sustain the complainant's case against a co-defendant. The exceptions to this rule are not uniformly defined in the authorities. But the current of them appears to limit the exceptions to cases where defendants stand in such a relation to each other that the admission of each, if not under oath, would be evidence against the others, as in the case of several defendants standing in the relation of copartners, or as having a joint interest in the subject matter of litigation. Christie v. Bishop, 1 Barb. Ch. 105; Leeds v. Marine Ins. Co., 2 Wheat. [15 U. S.] 380; Chapin v. Coleman, 11 Pick. 331, 1 Greenl. Ev. § 178. It seems, also, that the exceptions include the case where one defendant succeeds to the rights of another, or claims through another, pending the litigation. Osborn v. Bank of the United States, 9 Wheat. [22 U. S.] 738; Cowen & Hill's Notes, 648, 650. This case does not come within any of these exceptions. Even admitting then (which is not clear) that the silence of these defendants is equivalent, as to their co-defendant, to an answer affirmatively admitting the truth of the facts stated in the complaint, still such admission is not evidence against Christina Hamilton.

The complainant alleges in his complaint that the various conveyances by which Christina Hamilton was invested with the legal title to block 250 and lots 3, 4, 5 and 6

in block 253, were in fact procured by the husband and upon his money and credit, for the purpose of defrauding his creditors. The answer of Christina Hamilton denies these allegations of the complaint. The legal effect of the transactions in question and the intent with which they were procured and done must be controlled and determined by the law arising upon the facts found. The $1,200 which the wife received from the sale and use of her land in Missouri, by operation of law, became the property of the husband, as soon as she received it. The provision in the state constitution (article 15, § 5) concerning the property of married women, does not apply. as the constitution did not go into force until February 14, 1859, nearly two years after the receipt of the money by the wife. This being the case, the purchase by the wife of block 250 with $500 of that money, was in contemplation of law a purchase by the husband for her benefit. The circumstances under which this money was obtained by the husband may disclose an adequate and proper motive for the conveyance to the wife, but they fail to show that the consideration in point of law moved from her. It is a post nuptial settlement— the consideration moving from the husband and the conveyance being made to the wife, and, as to the creditors of the former, is to be considered as a voluntary conveyance from the husband to the wife. Sexton v. Wheaton, 8 Wheat. [21 U. S.] 241. As between the latter, there are no circumstances shown upon which the law would imply that the wife took the legal estate in trust for the husband. Upon the facts proved, the conveyance must be considered as an absolute gift from the latter to the former. The husband being free from debt at the date of the conveyance, it must be sustained, unless made with intent to defraud subsequent creditors, like the complainant. 2 Kent, Comm. 173; Reade v. Levingston, 3 Johns. Ch. 481. The statute of frauds of this state in favor of creditors (Code Or. 656) is substantially a copy of St. 13 Eliz. c. 5. The English and American decisions made upon this statute, all hold that a voluntary conveyance to a wife or child by a husband or father, not indebted at the time, is valid as against subsequent creditors, unless it affirmatively appears that it was made with intent to defraud and deceive them. There is nothing in the facts of this case to warrant the conclusion that this conveyance was made with intent to deceive and defraud subsequent creditors, unless it be that the grantor subsequently became insolvent. In some of the English cases it has been held that subsequent insolvency of the grantor is sufficient to warrant the conclusion that the conveyance was made with a view to such insolvency, and therefore with intent to defraud and deceive. But in these cases the insolvency occurred soon after the execution of the deed—it appeared to have been contemplated

by the grantor at the time, and it is to be supposed, as was the custom then in England, that the conveyance was secret—not put upon record—and that therefore the subsequent creditors acting upon the unchanged and visible possession of the grantor, were misled and deceived into crediting him upon false appearances.

In this case it is shown that the grantor did not contemplate insolvency at the time of the conveyance to the wife, and that he did not even contemplate engaging in the mercantile partnership which caused his insolvency for nearly a year afterwards. A fair and reasonable motive is shown for the conveyance—the investment by the husband of a part of the money which he had received from his wife, for her benefit. In addition, the conveyance was put upon record within six days after its execution. This is an important fact, and in my judgment sufficient in itself to show that the same was not made to defraud and deceive subsequent creditors. In Sexton v. Wheaton, 8 Wheat. [21 U. S.] 251, the supreme court, in contrasting the circumstances of that case with those of Stephens v. Olive, 2 Brown, Ch. 90, say—"The reasons why they" (these circumstances) "should not be considered in this case as indicating fraud, were stronger than in England. In this District" (of Columbia), "every deed must be recorded in a place prescribed by law. All titles of land are placed upon the record. The person who trusts another upon the faith of his real property, knows where he may apply to ascertain the nature of the title held by the person to whom he is about to give credit. In this case, the title never was in Jos. Wheaton. His creditors, therefore, never had a right to trust him on the faith of this house and lot." So in the case under consideration. The title to block 250 was never in the husband, and prior to the conveyance of it to the wife, the husband was never in the possession or control of it. Since February 19, 1858, the records of the county have shown that the title was in the wife. Under these circumstances it would be preposterous to presume that Vantine & Co. trusted the husband in 1863-4 upon the faith of this property, and there is as little reason for concluding that the husband procured the conveyance to be made and put upon record with the intent to defraud or deceive his subsequent creditors. If the husband had gone into the possession of the property, and kept the conveyance to his wife a secret, there might be good reason, in the absence of explanatory circumstances, for regarding the transaction as a fraudulent contrivance, intended to give him a fictitious credit with the world. But as it is, the means employed were inadequate to such an end, and it ought not to be presumed that they were intended to accomplish it.

In Sexton v. Wheaton, already quoted, the court, in speaking of a voluntary conveyance, says: "A man who makes such a conveyance, necessarily impairs his credit and, if openly done, warns those with whom he deals not to trust him too far; but this is not fraud." That case and this are very similar in all their important particulars. In some respects the objections to the validity of the conveyance were stronger than in this case. The court decided that the conveyance to the wife was not fraudulent as to subsequent creditors. The opinion of the court was delivered by Marshall, Ch. J., and in the course of it, he examines and construes all the leading English cases on the subject. It will be found to sustain the validity of this conveyance upon every point on which it is questioned. The complainant also seeks to charge this block 250, with the value of the improvements made upon it by the husband. The amount expended by the husband upon the property is $600. Two thirds of this sum was expended before the husband became insolvent, and all of it before he became indebted to Vantine & Co. Whatever might be the right of a creditor, who was such at the time the improvements were made, subsequent creditors can have no claim on the property on that account, unless it appears that this money was thus bestowed upon the wife, with intent to defraud and deceive such creditors. For the reasons already given when considering the validity of the conveyance of this property, there can be no presumption that this money was bestowed upon the wife with any such intention or end in view. It was done openly. The money was expended for improvements upon property, the title to which was on record as that of the wife's. There is as little reason for supposing or presuming that Vantine & Co. trusted the husband upon the faith of these improvements on block 250, as that they trusted him upon the faith of the property itself. At the date of the conveyance of block 250 to the wife, the effect of marriage upon the property of the wife was regulated and prescribed by the rules of the common law. The conveyance by its terms does not exclude the property from the marital rights of the husband. The husband then took an estate for his life in the premises. Starr v. Hamilton [Case No. 13,314]. The improvements placed upon the property were only temporary in their character, and primarily calculated to promote the use and enjoyment of the premises by the tenant for life. The ownership and possession of this life estate of the husband's, together with the use and enjoyment of these improvements, have, by virtue of a judgment of this court, already passed to a prior creditor of the husband's. The only interest of the wife in block 250, is the estate in remainder, after the determination of the particular estate for the life of the husband. In my judgment, this estate of the wife's, ought not, nor cannot, be charged with the value of these temporary improvements, even in favor of creditors

whose debts existed at the time they were made. But,· however this may be, their value, as an incident of the husband's life estate in the land, has already been·appropriated to the payment of his debts, and is therefore beyond the reach of the present creditor. This disposes of the case of complainant, so far as block 250 is concerned, except as to the interest therein, purchased from the Lownsdale heirs, which will hereafter be considered. As to the lots in block 253, the circumstances of the case are different. At the date of the conveyance of these to the wife, the husband was actually and notoriously insolvent, and Vantine & Co. were among his existing creditors. Although notwithstanding these circumstances, these conveyances may be valid, yet they are sufficient to excite suspicions of fraudulent contrivances, which will induce a court to scrutinize the motives and conduct of the parties closely and with more or less distrust. The purchase and conveyance of lot 4 will be first considered. This was not a conveyance from the husband to the wife, either directly or by procurement of the former. It was a purchase in point of fact by the wife. At common law a wife could purchase an estate in fee, even without her husband's consent (2 Kent, Comm. 150), and her power in this respect is not qualified by any statute of this state. The consideration for the conveyance moved directly from the wife, and the purchase in no way diminished the husband's resources or hindered or delayed his creditors in the recovery of their debts. The consideration was the release by the wife of her contingent interest—potential right to dower—in blocks 251 and 252, before then sold on execution against the husband. True, the husband joined in the instrument releasing this interest in these blocks, but that was rendered necessary by our statute.

I have examined this question with care, and am now satisfied, that the expressions upon this subject in the opinion in Starr v. Hamilton [supra], decided in this court, are erroneous. For the purpose of that case, the conclusion then reached — that the husband had no interest in the property—was correct; but the remark that the property was a gift from the husband, because the release of dower was a consideration moving from him, was undoubtedly a mistake. On the contrary, I am now satisfied that it must be held to be a valuable consideration moving directly from the wife. It was sufficient in law to support a conveyance of property equivalent in value, directly from the husband to the wife, even against existing creditors of the former. For still stronger reasons it is sufficient consideration to support a conveyance to the wife from a stranger. Bullard v. Briggs. 7 Pick. 533; Peirce v. Thompson. 17 Pick. 394; Needham v. Sanger, Id. 509; Cord, Mar. Wom. § 31 et seq.; 3 Kent, Comm. 147. According to the facts found this release of dower was the only consideration for the con-

veyance, and the evidence in the case does not furnish a particle of proof to the contrary. This right was in no way subject to the control of the husband, or liable for his debts. Bullard v. Briggs, supra, was a case of conveyance by the husband to the wife, in consideration of the latter's release of right to dower. The conveyance was attempted to be impeached by existing creditors. The court sustained the conveyance. and in conclusion said—"We are quite satisfied with this principle of law, and are glad to find that it rests on authority as well as reason; for under the restrictions mentioned, creditors cannot be injured; the husband's estate, to which they may look, not having been impaired substantially by such arrangements. Whenever it shall appear, that such settlements are but pretexts to secure a beneficial property to the husband, or wife or children, the law will lay bare the transaction and defeat the contrivance, however ingeniously it may have been devised." But this transaction, being a conveyance from a stranger to the wife for a valuable consideration, moving from the wife, in which the husband had no interest or right, there can be no possible ground for presuming or suspecting that it was a mere pretext or contrivance to secure a beneficial property to the husband or any one else, to the prejudice or hindrance of his creditors. In truth, as has been already remarked, the purchase in no way diminished the husband's estate or hindered or delayed his creditors in the recovery of their debts, and therefore it could not have been made with any such intention. The husband had no interest in the property conveyed or the consideration given for it, and his creditors might as well seek to subject the dower of the wife to the payment of his debts as lot 4. Indeed, a gift of this lot from the grantors—Robertson and wife—to Christina Hamilton, might as well be considered a contrivance to defraud the creditors of Alexander Hamilton, as the conveyance in question. The expenditure made by the husband in repairing the dwelling house on this lot, and in fencing it in conjunction with 3, 5 and 6, will now be considered. The complainant maintains that this expenditure was in fact a gift to the wife by the husband, with intent to defraud existing creditors. The matter transpired in 1864, and as the husband was then insolvent and indebted to Vantine & Co., the law presumes that a gift to the wife is fraudulent as against such creditors.

An insolvent husband ought not to be allowed to put his property beyond the reach of his creditors, by investing it in improvements upon his wife's estate. But it is the duty of the husband to maintain his family. When an insolvent husband lives with his family on the property of the wife, it seems just and reasonable that he should be allowed, notwithstanding his creditors, to keep the same habitable and in repair. Within reasonable limits, this ought to be regarded as a necessary and proper means of performing his·ob-

ligations to support his wife and family. 15 B. Mon. 82. I admit that there is both temptation and opportunity here to practice fraud upon creditors, and that whenever it appears, or there is reasonable ground for presuming that expenditures have been made by the husband upon the wife's estate, beyond what is absolutely necessary and proper for the shelter and maintenance of the family, that the expenditure ought to be considered a gift to the wife in fraud of the rights of creditors. What will amount to such a gift and what will not, is difficult to determine beforehand. Each case must rest upon its peculiar circumstances. Under the most rigid rule, I do not think that this expenditure can be regarded in the light of a gift to the wife. Between the time of the purchase of this property by the wife and the commencement of this suit, more than two years had elapsed, during which time the husband and family lived in the house. The husband had no other house to shelter his family in If he had rented one, however humble, the expense would have exceeded in amount this expenditure. Yet he could have paid such rent from his earnings or from any means within his control, and when paid, the money would have been beyond the reach of his creditors. During these two years the house was plastered at a cost of $220. Two hundred dollars of this amount was a stale debt due the husband from a third person; and $20 was paid in cash by the wife. This, I suppose, was her personal earnings—the testimony says that it was paid by her—but, of course, in law, it was the money of the husband. Twenty-seven dollars was expended in raising the house and putting blocks under it. The house was built by the husband in 1858, when the property was his, and appears to have been in an unfinished condition. These repairs and additions seem to have been necessary to make it tenantable and preserve it from decay. Thirty dollars was expended for material for fencing, and the fence was built by the husband. A creditor cannot compel his debtor to labor, although in certain cases he may reach the wages of the latter: but when no wages are earned—as where the labor is given gratuitously—the debtor acquires nothing and cannot be said to dispose of his property with intent to defraud his creditors. Though an insolvent husband cannot give property to his wife, he may give her his personal services, and her estate will not be made chargeable to his creditors. 11 Ala. 386. Under all the circumstances. I am satisfied that this expenditure should not be regarded as a gift to the wife, but as a legitimate expense incurred by the husband in pursuance of his duty and obligation to support his wife and family.

In considering the matter of these expenditures, I have not included the item for painting the house. The testimony does not state what the painting cost, but that it was done by the tenant of a small house on the premises for rent. As will appear hereafter, this being the separate property of the wife, the proceeds of it—the rents and profits—are also her separate estate. The payment for this work, then, whatever it amounted to, was made by the wife from her separate property, and not by the husband in fraud of his creditors.

The purchase of lots 4, 5 and 6 in block 253, will next be considered. The apparent motive for this transaction will be best shown by a brief statement of the particular circumstances which appear to have induced it. These lots and lot 4, formed the half of block 253, originally purchased by the husband in 1858, in conjunction with blocks 251 and 252, in part, with the $700 derived from the property of the wife. On January 14, 1862, all the property was sold on execution, to Abbott, to satisfy a debt of the husband's. The dwelling house on the half of block 253, had been erected by the husband before his failure, and occupied by the family as a home. The family were still on the premises, when the property, less the contingent interest of the wife, her inchoate right to dower, was sold on execution to Abbott. In August, 1864, the family still being on the premises, and Abbott having conveyed to Robertson, the wife and the latter commenced negotiations for her release of dower on blocks 251 and 252. Robertson offered to convey lot 4 for the desired release. The dwelling house or outbuildings being partly on some of the lots other than 4, and the whole constituting as it were the family home, the wife conceived the idea of purchasing lots 3, 5 and 6 also. Being then unable to pay for them. she arranged with Young to purchase these lots for her as stated in the finding of the facts. This arrangement being accomplished, the wife accepted Robertson's offer—released her right to dower in blocks 251 and 252—and received a conveyance to her own use of lot 4. At the same time Robertson conveyed lots 3, 5 and 6 to Young for the consideration received from the latter of $700.

The conveyance by Young and wife to Christina Hamilton of lots 4, 5 and 6 on September 5, 1865, to the exclusive use of the latter, was neither in form or law a conveyance from the husband, and therefore cannot be considered as made with intent to defraud or deceive his creditors. The husband had no interest in the property, nor did the consideration for the conveyance move from him directly or indirectly. The consideration was the promissory note of the wife. So far as this consideration is concerned, the conveyance amounts to a gift from Young to the wife, because the wife in law is incapable of binding herself personally, and therefore this promissory note was invalid and without value. Her disability during coverture prevails in this state as at common law. In the El Refugio Case [Case No. 4,421], recently decided in the United States circuit court for the district of California, before

Mr. Justice Field, this subject was examined at length. The conclusion of the court in that case was that: "Except in certain special cases, to which we will presently refer, a married woman is incapable of contracting a personal obligation. Her disability arising from her coverture, prevails in all its force in this state, as at common law. By no form of acknowledgment or mode of execution can this disability be overcome. Her signature will not impart validity to the contract; nor will her uniting in its execution with her husband render it more than his personal obligation." But $550 of the note was paid to Young on September 16, 1865. The facts show that this was done by means of money borrowed on the joint note of Hamilton and wife, secured by their joint mortgage on the half of block 250. Of course this note to Catlin, so far as the wife is concerned, is a nullity. The note is nothing more than the personal obligation of the husband. The husband being insolvent at the time, the transaction must be scrutinized closely, so as to prevent him from successfully using his wife as an agent to purchase property with his means or credit, to hold in fraud of his creditors. Credit, which is the life of a commercial community, can only be maintained by rigidly subjecting the property of the debtor to the payment of his debts. It cannot be supposed that Young intended to make a gift of this property to the wife, and although he took an invalid promise as a consideration for the conveyance, it must be presumed that it was the intention and expectation of the parties that it should be paid notwithstanding. The payment of $550 to Young, leaving out of sight the mortgage for the present, was made with money borrowed on the note of the husband. This must be treated as the money of the husband, and if so, the consideration of the conveyance from Young to the wife, moved from the husband. This being so, in contemplation of law, the conveyance was a voluntary one from the husband to the wife, and therefore void as against the complainant, an existing creditor. But this is not all. The purchase money obtained from Catlin was not borrowed on the personal obligation of the husband alone. The note was secured by a mortgage on the property of the husband and wife in the half of block 250. The wife, in conjunction with her husband, was authorized to execute the mortgage to secure the payment of the note, considered as the note of the husband alone. As the husband was then insolvent, and still remains so, the presumption is that the money was in fact obtained on the security of the mortgage. And, as it appears that the note is not yet paid, it may be safely assumed that the property will be ultimately subjected to sale for its payment. Now, if it shall result that the wife's property in the half of block 250 shall be subjected to the payment of the note to Catlin, then the purchase money paid to

Young would move from her. This being so, the conveyance would not be in fraud of her husband's creditors, and would be valid. At the date of the mortgage the husband had only a life estate in block 250, and it appears that this has since been taken on execution and sold to satisfy other debts of his. If the lien of the judgment on which the sale took place is older than the mortgage to Catlin, the latter would only affect the estate in remainder of the wife, and then it would be certain that her property must be taken to satisfy the note. But which is the elder does not appear. But it does appear that there are judgments against the husband, given before 1861, and still unsatisfied, to the amount of $6,525, besides the accruing interest thereon. There is no direct proof of the present value of this life estate of the husband's, but from all the circumstances shown, concerning the location, condition, and first cost of the block, it is apparent that it is not near sufficient to pay the husband's debts, which are now a lien upon it, and were so prior to the execution of this mortgage. Upon this matter, of course, I speak as to probabilities, as the proof does not enable me to speak with certainty.

Under these circumstances, to assume that the consideration for the conveyance of lots 3, 5 and 6, came from the husband, and that therefore the conveyance is fraudulent as against creditors, might work great injustice to the wife, for the strong probability is that the note to Catlin will be paid out of her estate in block 250. Indeed it does not appear whether that estate is sufficient for that purpose, but it probably is. But if it should prove insufficient for that purpose, the wife is not personally liable, and the property which she pledged by the mortgage being exhausted, the remainder of the debt would hold good against the husband and upon his personal obligation. And then, in that event and to that extent, he must be deemed to have furnished the consideration of the conveyance to the wife from Young—that is, so much of the money would prove to have been borrowed upon his personal credit and obligation, and therefore a proportional interest in the property purchased would be subject to the claims of existing creditors. If, as a matter of fact, it was apparent upon the proof, that the purchase of lots 3, 5 and 6, and the loan of the purchase money from Catlin, were the act of the husband, and that the wife only acted in the premises as his security, it might be proper to treat her accordingly, and decree the sale of these lots at once, and after paying the wife $700 with interest, for which her property is pledged, to apply the remainder of the proceeds to the debt of the complainant. But the proof shows, whatever may have been the motives of the parties, that the purchase in the first instance was made by the wife, and that the subsequent loan of the purchase money was in fact obtained by her, and that the hus-

band joined in the note and mortgage thereof, because his concurrence in the act was deemed necessary by the party making the loan. True, these facts do not modify the legal effect of the transaction. In law, the note and mortgage is the act of the husband, while by the mortgage the wife only pledges her property as a security for the debt of the other. But I think these facts furnish substantial and controlling reasons why a court of equity should so deal with the subject, as to provide if possible that the wife may realize the benefit of her scheme to secure to herself the home of the family, and also to give her the benefit of the increase in value, if any, of the property, since the time of its purchase. If the sale of her estate in block 250 will do this, it may be so applied without injustice to any one, and much probable benefit to her. At least she should have the option. Besides it is evident that the wife had the same right to dower in these lots as in blocks 251 and 252. This right was not released to Robertson in the purchase of lot 4, and in the arrangement between the parties, which resulted in Young's purchasing these lots for her from the former, the value of this contingent interest of the wife's must have been taken into consideration. It is fair to presume that it was a part of the consideration. If these lots were now sold for the benefit of the husband's creditors, the sale would be subject to such right of dower, with which the wife has never parted. The payment of $1,500 in discharge of the lien upon block 250, must be considered as a purchase of the interest of the heirs of Nancy Lownsdale in the premises. The proceedings and decree in the partition suit are very cursorily stated in the complaint, but taking the allegations on that subject in connection with the law relating to the partition of real property, and it is apparent that these heirs were tenants in common with Christina Hamilton in block 250, and that the decree was based upon the fact that their interest in the premises was deemed to be worth $1,500, and that the property should be charged with the payment of that sum, instead of being divided in proportion of the respective interests of the tenants. What proportion the interests of the heirs bore to that of Christina Hamilton does not appear, and there is nothing in the pleadings or the proofs in this case by which that fact can be ascertained. This interest of these heirs in block 250 was purchased by money borrowed of Frances Young on February 16, 1866. The money was borrowed on the joint note and mortgage of the husband and wife. The property mortgaged was block 250. This transaction is regarded in law in the same light as the prior loan from Catlin. So far as the personal obligation is concerned, it is the debt of the husband—the signature of the wife to the note being a nullity. The husband was insolvent at the time. The debt was contracted for the benefit of the property

of the wife, and that property was pledged and remains pledged for the payment of the debt.

As the matter stands, it is altogether probable that the property of the wife will be taken to pay the debt. Whether it will be sufficient or not, for that purpose, does not appear. But the personal obligation of the husband was also given for the debt and he is liable to pay it, and may be compelled to do so, in whole or in part. In that event and to that extent, the purchase money for this interest would move from him, and the interest thus purchased would be subject to the claims of his creditors. But it cannot be absolutely assumed that the purchase money was obtained on the credit of the husband, or that he will ultimately repay it; and without this it would work injustice to the wife to treat this interest as purchased by the husband and subject it to sale for the benefit of his creditors—for, if the property of the wife in block 250 is ultimately subjected to the payment of the loan from Frances Young, as it probably will be, then the consideration for the purchase of the interest of the Lownsdale heirs, would come from her, and such interest would be hers, and not the husband's. Lot 4, and whatever interest the wife may be determined to have in lots 3, 5 and 6 in block 253, are the separate estate of the wife. Although this property—being in fact purchased by the wife—was not "acquired by gift, devise, or inheritance," and therefore not within the clause of the constitution (article 15, § 5), which exempts such property from "the debts or contracts of the husband," yet the nature of the conveyances from Robertson and Young to her, makes it her separate property. These conveyances studiously declare, that the grant is made to her for her own benefit, exclusive of the control of her husband. These words effectually exclude the marital rights of the husband or the claims of his creditors. Cord, Mar. Wom. § 156; 2 Story, Eq. §§ 1880–1882. It does not appear that this property was ever registered by the wife in pursuance of the act of June 4, 1859, in force when she acquired it. But that act by its terms only applies to property "acquired by gift, devise or inheritance." Code Or. 786.

As the case now stands, it satisfactorily appears that the interest in block 250 conveyed to the wife by Daniel H. Lownsdale, subject to the life estate of her husband, and lot 4 in block 253, are the absolute property of the wife, and not subject to the claims of the husband's creditors. But as to the interest in block 250, purchased from the Lownsdale heirs, and lots 3, 5 and 6 in block 253, no final decree can be safely made upon the present state of the proofs. An interlocutory decree will be therefore entered, referring the case to a master, with authority to take testimony and report to the court the present cash value of the wife's interest in block 250, derived from Daniel H. Lownsdale, and also

the present value of the interest in said block, purchased from the Lownsdale heirs; and further, to ascertain the amount due upon the note and mortgage to Catlin. and also to Frances Young, and that the clerk of this court be appointed special master to execute this order. On January 9, 1868, upon the report of the special master, there was a final decree dismissing the bill.